IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| **N.T.** *et al.*, | * | |
|    Plaintiffs | * | |
| v. | * | CIVIL NO.  JKB-11-356 |
| **BALT. CITY BD. SCH. COMM'RS** *et al.*, | * | |
|    Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

*I. Background*

Filed by a Baltimore City, Maryland, school student and his mother, this case alleges Defendants denied N.T., the student, free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), codified in 20 U.S.C. § 1400 *et seq.*; the complaint also alleges disability discrimination in violation of section 504 of the Rehabilitation Act of 1973 ("§ 504" or "RA"), codified at 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.[1]  (Compl., ECF No. 1.)  The complaint further alleges a cause of action under 42 U.S.C. § 1983 for denial of substantive and procedural due process under the Fourteenth Amendment to the federal Constitution.  Named as Defendants were the Baltimore City Board of School Commissioners ("BCBSC"), Andrés A. Alonso, Dale J. Halterman, Michael L. Hamilton, Jonathan Brice, Timothy Dawson, Tracey N. Johnson, Joseph Baribeault, Marshall T. Goodwin, Edward Bonaparte, Barbara M. Cooper, and Christine A. Cichan.  All of

---

[1] Although Plaintiffs allege the Americans with Disabilities Act ("ADA") and § 504 as the bases for Count One, they allege in their jurisdictional statement that this Court's jurisdiction is also invoked, in part, on 20 U.S.C. § 1400 *et seq.*, which is the codification of IDEA.  In Count One, besides claiming a violation of § 504, Plaintiffs specifically allege Defendants denied N.T. "the benefits of his statutorily protected civil right to FAPE."  (Compl., ¶ 71.)  It is presumed that Plaintiffs are invoking IDEA, ADA, and § 504 of the Rehabilitation Act as the bases for Count One.  The Court earlier reached the same conclusion in its prior order of August 23, 2011.  (ECF No. 32 at 8.)

the non-BCBSC Defendants were sued individually and in their official capacities as present or former BCBSC employees.

The case has three remaining counts after dismissal of Plaintiffs' negligence count and their count for civil conspiracy. (ECF No. 33.) Pending before the Court is Defendants' motion for summary judgment. (ECF No. 67.) The Court has considered Plaintiffs' response (ECF No. 74), to which no reply was filed. The Court has also considered the parties' separate supplemental submissions addressing the question of mootness as to Plaintiffs' request for injunctive relief. (ECF Nos. 77 & 78.) No hearing is necessary. Local Rule 105.6 (D. Md. 2011). The motion will be granted in part and denied in part.

## II. *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial,

Fed. R. Civ. P. 56(c)(1).  Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  Rule 56(c)(4).

## III. Analysis

### A. *Amenability to suit*

Defendants have raised objections to their amenability to suit under § 504 of the Rehabilitation Act and the ADA.  They argue that, in their official capacities, they are entitled to sovereign immunity.[2]  They further argue that these same Defendants are not subject to suit under 42 U.S.C. § 1983.  Defendants are partially correct.

The case of *Constantine v. Rectors & Visitors of Geo. Mason Univ.*, 411 F.3d 474 (4th Cir. 2005), considered whether Eleventh Amendment immunity was available to George Mason University ("GMU") in a student's suit pursuant to the ADA.  The Fourth Circuit concluded that GMU could not claim immunity because Title II of the ADA, pertaining to disability discrimination in the provision of public services, is valid legislation under § 5 of the Fourteenth Amendment, "at least as it applies to public higher education."  *Id.* at 490.  The instant suit involves a local board of education that, under Maryland law, is considered a state agency.  *See Insalaco v. Anne Arundel Co. Pub. Schs*, Civ. No. JKB-10-1392, 2011 U.S. Dist. LEXIS 149998, at *2-3 (D. Md. Aug. 12, 2011); *Lee-Thomas v. Bd. of Educ. of Prince George's Cnty.*, Civ. No. CBD-08-3327, 2010 WL 2365673, at *1 (D. Md. Jun. 8, 2010); *Cepada v. Bd. of Educ. of Balt. Cnty.*, Civ. No. WDQ-10-0537, 2011 WL 1636405, at *4 (D. Md. Apr. 28, 2011); *Savoy v. Charles Cnty. Pub. Schs.*, Civ. No. AW-09-788, 2010 WL 481345, at *3 (D. Md. Feb. 5, 2010);

---

[2] Defendants also argue that the non-BCBSC Defendants are not properly sued in their individual capacities under the ADA and RA.  However, Count One, alleging violations of the ADA and RA, is brought only against BCBSC "and individual defendants in their official capacities," so the Court need not address this contention.

*Rosenfeld v. Montgomery Cnty. Pub. Schs.*, 41 F. Supp. 2d 581, 586 (D. Md. 1999) (Legg, J.); *Jones v. Frederick Cnty. Bd. of Educ.*, 689 F. Supp. 535, 538 (D. Md. 1988) (Young, J.). But the fact that this case involves public secondary education rather than public higher education does not distinguish the instant case from *Constantine* when viewed from a constitutional perspective. *Accord, Lewis v. Bd. Educ. Kent Cnty.*, Civ. No. JFM-07-955, 2007 WL 2343659, at *1 (D. Md. Aug. 14, 2007). Thus, the Court holds BCBSC and the non-BCBSC Defendants sued in their official capacities do not have Eleventh Amendment immunity from suit under Title II of the ADA.

Plaintiffs' § 504 claims against BCBSC and the non-BCBSC Defendants sued in their official capacities also are not barred by the Eleventh Amendment. *See Constantine*, 411 F.3d at 496 (GMU waived Eleventh Amendment immunity by accepting federal funds under statute clearly and unambiguously conditioning receipt of funds on waiver of immunity). As with the prior, similar argument under the ADA, the Court discerns no constitutional significance in the fact that Defendants in the instant case are representative of public secondary education rather than public higher education.

As for Count Two against "BCBSC and the individual defendants, in their offical [sic] capacities, for violation of section 1983," the law is clear that a State and "official capacity" defendants are not susceptible to suit under 42 U.S.C. § 1983 because they are not "persons" within that statute's meaning. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Count Two will be dismissed in its entirety. Furthermore, because the only other claim, Count Four, seeks attorney's fees pursuant to 42 U.S.C. § 1988 in anticipation of Plaintiffs being "prevailing parties" as to their claim under 42 U.S.C. § 1983, and because the § 1983 claim is being dismissed, Count Four will also be dismissed.

This leaves Count One, against BCBSC and the non-BCBSC Defendants in their official capacities, alleging denial of FAPE under IDEA and disability discrimination under the ADA and RA, as the remaining basis for Plaintiffs' case.

### B. Mootness

When this Court held a hearing on April 2, 2012, pertaining to discovery matters, certain statements by counsel raised a question as to whether this case, at least in part, was moot. Specifically, several references were made to the Plaintiffs' move to Florida. Consequently, the Court directed the parties to submit supplemental briefs on this question. (ECF No. 76.)

In Plaintiffs' response, they indicated they have been, up till now, residents of Baltimore City. However, Jane Doe, parent and guardian of N.T., stated in her affidavit the following:

> 4. I have been traveling back and forth to Florida since January 2012 in order to secure housing and employment upon my son's graduation from high school.
>
> 5. I intend to move to Florida on June 16, 2012.

(Pls.' Mem., Ex. 3, ECF No. 78.)

Since N.T. is a minor, and since his parent and guardian is moving to Florida, the Court presumes that N.T. will also be moving to Florida. As an officer of the Court, Plaintiffs' counsel has a duty to bring to the Court's attention any information bearing on this question. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997) ("It is the duty of counsel to bring to the federal tribunal's attention, '*without delay*,' facts that may raise a question of mootness"). This lawsuit, the essence of which is the denial of FAPE, may only be brought against the State or educational agency that bears responsibility for FAPE. This is evident from the definition of FAPE:

> The term "free appropriate public education" means special education and related services that—

> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education *in the State involved*; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9) (emphasis added).  Defendants have also cited a regulation of the Department of Education that supports this view:

> A recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person *who is in the recipient's jurisdiction*, regardless of the nature or severity of the person's handicap.

34 C.F.R. § 104.33(a) (emphasis added).

The Court concludes that even if a denial of FAPE is found to have occurred, ordering BCBSC to provide FAPE for a child no longer residing in Baltimore City would be without legal basis.  Thus, if N.T. moves outside of Baltimore City, the portion of Plaintiffs' case that requests injunctive relief in the form of FAPE will be moot.  *See D.F. v. Collingswood Pub. Schs.*, 804 F. Supp. 2d 250, 254-56 (D. N.J. 2011) (student's move from New Jersey to Georgia rendered claims for FAPE moot).

In addition, it is well settled that denial of FAPE, the primary, remaining cause of action in the case, does not result in the award of damages.  *Sellers v. Sch. Bd. City of Manassas*, 141 F.3d 524, 527 (4th Cir. 1998).[3]  So, if Plaintiffs move outside of Baltimore City, the only remedy that Plaintiffs could seek is injunctive relief for correction of N.T.'s educational file.[4]  *See* Complaint 23.  Plaintiffs' counsel must notify the Court, in a timely fashion, of any meaningful change in her clients' place of residence.  At the time of this writing, no such notification has

---

[3] Plaintiffs did not make a claim for reimbursement of educational expenses necessitated by an alleged denial of FAPE.

[4] Another request for injunctive relief was for expungement of disciplinary records.  However, this particular request was premised upon a denial of procedural due process, a claim that is being dismissed because it was brought against improper parties.  Thus, this portion of the prayer for relief is no longer viable.

been received by the Court, and the Court presumes that no part of this case should now be considered moot.

### C.  *Denial of FAPE*

Surprisingly, Defendants did not seek summary judgment as to whether they violated IDEA by denying FAPE to N.T.  They only sought summary judgment, with respect to Count One, on Plaintiffs' allegations of discrimination under the ADA and § 504 of the RA.  As noted *supra* (*see* footnote 1), the complaint has clearly alleged a violation of IDEA for denial of FAPE, and this is also clearly part of Count One.  This issue, therefore, is not considered by the Court in this summary-judgment proceeding and remains an issue in the case.

### D.  *Alleged Violations of Section 504 of the Rehabilitation Act and the ADA*

Generally, one seeking recovery for violation of either § 504 of the RA or Title II of the ADA must establish (1) he has a disability, (2) he was otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity or he was otherwise discriminated against on the basis of his disability.  *Constantine*, 411 F.3d at 498.  Proof of causation is different under the two acts.  Under Title II of the ADA, a plaintiff must prove that disability "played a motivating role" in the adverse action, while under § 504 of the RA, a plaintiff must prove that the discriminatory conduct was "solely by reason" of the plaintiff's disability.  *Id.* n.17.  Proof of denial of FAPE is not sufficient in itself to prove discrimination under § 504 of the RA but must be accompanied by proof of bad faith or gross misjudgment.  *Sellers*, 141 F.3d at 528-29.

N.T.'s disability is undisputed.  And no dispute has been raised as to whether N.T., as a public school student in Baltimore City, was eligible for public education in the city.  Thus, the question arises as to whether N.T. either was excluded from participation in or denied public

education or was otherwise discriminated against on the basis of his disability. Defendants assert no genuine dispute of material fact exists on this third element of proof.

Defendants regard as undisputed the following allegations from the complaint:

1. During his high school years, N.T. attended Baltimore City College, Success Academy, and Dunbar High School.

2. N.T. has a § 504 plan,[5] which was drafted on May 8, 2003.

3. In February 2009, N.T. was arrested and charged with various offenses following an incident that occurred outside City College and involved other City School students.

4. A manifestation meeting[6] was not held prior to a decision of extended suspension or expulsion.

5. Jane Doe, N.T.'s mother, met with Defendant Bonaparte at the Office of Suspension Services in early March 2009 regarding the incident.

6. N.T. attended Success Academy from March 2009 until the end of the academic year.

7. On December 3, 2009, N.T. was arrested at school and charged with various offenses including assault and attempted robbery regarding a fight that had allegedly occurred on City College's football field after school involving several students.

8. A manifestation meeting, attended by Jane Doe, was held.

9. It was determined that the December 2009 incident was not a manifestation of N.T.'s disability.

10. Doe attended another meeting on December 15, 2009, at which she was told the school recommended N.T. for long term suspension for his involvement in the December 2009 incident; she was also advised of her right to appeal the decision.

---

[5] Although the parties do not define "section 504 plan," the Court notes Plaintiffs have submitted what appears to be a copy of an Baltimore City Public Schools Administrative Regulation entitled "Suspension or Expulsion of a Student with Disabilities under Section 504." (Pls.' Opp., Ex. 1.) In that regulation, the term "504 Plan" is defined as "[a]n individualized plan of accommodations and modifications to provide a free and appropriate education to a student who has a disability that substantially limits a major life activity." (*Id.* at 1.) Additionally, Plaintiffs have submitted copies of what appear to be Individualized Education Plans for N.T., dated November 14, 2007, and July 27, 2009. (*Id.*, Ex. 13.) It appears that the terms "504 plan" and "individualized education plan" are intended to be interchangeable by BCBSC as applied to N.T. *See also* 20 U.S.C. § 1401(14) (defining "individualized education program" in IDEA). As did Defendants when filing their motion for summary judgment, Plaintiffs have included within their exhibits in opposition to Defendants' motion materials that contain the minor's name and/or birthdate, which should have been redacted or sealed from the public record. (ECF No. 74.) The Clerk will be directed to seal Plaintiffs' Exhibits 7—35, 37, and 38 in their entirety.

[6] "Manifestation determination" is a term used in IDEA, 20 U.S.C. § 1415(k)(1)(E), which prescribes a procedure to be used by the school for determining whether a child's conduct is a manifestation of the child's disability.

11. N.T. attended an alternative placement, Success Academy, during this long term suspension, which lasted until January 19, 2010.[7]

12. On February 1, 2010, N.T. was accused of participating in an incident in which some students "beat up and stole another student's backpack."

13. A manifestation meeting was held regarding this incident on February 4, 2010.

14. City College determined N.T.'s behavior in the February 2010 incident was not a manifestation of his disability.

15. Doe attended another meeting on February 22, 2010, in which the school recommended N.T. should be expelled and advised Doe of her right to appeal this decision.

16. On March 1, 2010, Doe received a second notice of the expulsion and notice of N.T.'s due process rights and right of appeal.

17. On March 2, 2010, Doe filed an appeal of the February 22, 2010, decision to expel N.T.

18. On March 26, 2010, Doe met with Defendant Brice, who was Executive Director, Student Support and Safety, and withdrew her appeal in exchange for her son to be admitted to Dunbar High School.

19. As of the filing of the complaint in this Court, N.T. was not doing well academically.

(Defs.' Mot. Summ. J. 4-6, ECF No. 67.)

The preceding facts show that N.T. was not excluded from or denied participation in public education in Baltimore City because of his disability, and nothing allows a conclusion that Defendants discriminated against N.T. on the basis of his disability. These facts only show that N.T. was disciplined for apparent misconduct.

The Court turns now to any evidence offered by Plaintiffs on the issue of disability discrimination. In sum, Plaintiffs have failed to submit admissible evidence showing discrimination under either Title II of the ADA or § 504 of the RA. Their evidence in opposition consists of various policies and procedures of BCBSC; police reports, incident reports, and correspondence in relation to the February 2009, December 2009, and February 2010 incidents;

---

[7] In the Court's prior order (ECF No. 32 at 10 nn.9 & 11), it was noted that dates in the complaint did not always appear to be correct. Because the Court has previously interpreted the date of January 19, *2009*, in the complaint as January 19, *2010*, and because neither party has taken issue with that interpretation, the Court, consistent with its earlier order, uses the date of January 19, 2010, here.

transcripts and correspondence pertaining to N.T.'s academic record and the availability of remedial education for N.T.; individualized plans for N.T.; and an affidavit of Jane Doe merely stating that, first, she is over the age of 18 and is competent to make an affidavit and, second, she submits the affidavit in support of Plaintiffs' opposition to Defendants' motion.  (ECF No. 74.)  The Court can find no evidence in any of these exhibits of purposeful discrimination based on N.T.'s disability.

Plaintiffs' mere recitation of allegations from their complaint does not suffice as admissible evidence that may be considered by the Court on this motion for summary judgment.  For example, in their opposition, Plaintiffs say, "Starting with the 9th grade, there is no evidence that N.T. received 504 plan services including counseling services for him to transition smoothly into high school academic and social life, and none of the modifications or accommodations were provided in N.T.'s regular classroom."  (Pls.' Opp. 17-18.)  Their unsworn statement, even if sworn to, does not suffice for proof of discrimination.  At best, this would only provide some support for denial of FAPE.  Likewise, failure to follow proper school system procedures—as in the admitted failure to notify Doe that a meeting would be a manifestation meeting or the questions Plaintiffs have raised about the witness identification of N.T. as a participant in the incidents leading up to the imposition of suspensions and expulsion—does not establish discrimination.  The Court concludes that Defendants have shown no genuine dispute of material fact exists on Plaintiffs' claims of discrimination under Title II of the ADA and § 504 of the RA and that Defendants are entitled to judgment as a matter of law with respect to these claims.

*IV. Conclusion*

Partial summary judgment will be granted to Defendants on Count One as to Plaintiffs' claims of discrimination under Title II of the ADA and § 504 of the RA.  Plaintiffs' claim of denial of FAPE remains in the case.  Count Two, alleging denial of due process in violation of

42 U.S.C. § 1983, will be dismissed as will be Count Four, seeking attorney's fees pursuant to 42 U.S.C. § 1988. A separate order will be entered that accords with this memorandum and that also sets in this case for a telephone scheduling conference.

DATED this 24th day of July, 2012.

BY THE COURT:

/s/
James K. Bredar
United States District Judge